IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

HAROLD G. JORDENING                                                                         PLAINTIFF

VS.                                                                         CIVIL ACTION NO. 3:15cv141

KEN K. BROWN, Deputy Director of Driver Services
Bureau of the Mississippi Department of Public Safety                                       DEFENDANT

**ORDER**

The *pro se* plaintiff Harold Jordening has filed a motion for default judgment in the above-entitled action, after the clerk's entry of default against defendant Ken K. Brown. Defendant has responded in opposition to the motion, and he has submitted his own motion to set aside the entry of default. After considering the parties' submissions, this court concludes that plaintiff's motion should be denied and that defendant's motion should be granted.

Plaintiff filed this action against Brown, who is Deputy Director of the Driver Services Bureau of the Mississippi Department of Public Safety (MDPS). In his complaint, plaintiff alleges that he was wrongfully denied, in violation of the Due Process Clause of the Fourteenth Amendment, a driver's license, based upon his medical history. In his complaint, plaintiff seeks monetary damages against Brown, but, as this court noted in an April 13, 2016 show cause order, it seems clear that plaintiff's allegations implicate the official actions of the MDPS in denying him a driver's license. Indeed, the complaint clearly alleges an organizational failure on the part of the MDPS to grant him a license, and it does not appear to allege any specific wrongdoing by

1

Brown himself. In its prior order, the court noted that it "therefore interprets the complaint as one filed against the MDPS itself, with Brown merely being sued in an official, representative capacity."

This court's show cause order was entered in response to plaintiff's motion for default judgment. In that motion, plaintiff correctly noted that defendant had not filed an answer, or any other response, to the complaint, and that the clerk had accordingly issued an entry of default against him. In its show cause order, this court did not rule upon this motion, but it did express its sympathy with plaintiff, based on the evident hardships he has had to endure in living without a driver's license. Specifically, this court wrote that:

> The complaint in this case alleges that plaintiff was deprived of a driver's license in violation of the Due Process Clause of the Fourteenth Amendment. Moreover, plaintiff alleges that, as a result of this failure, he has "no one [to] take him to church, doctor's appointments or any place he need[s] to go. He walks with a crutch due to disability where ever he wants to go, or hitch hike with anyone willing to assist him to get where he needs to go." Needless to say, this court has considerable sympathy for plaintiff's plight, based upon these allegations. Moreover, the docket asserts that service of process was validly served upon Brown, and a clerk's entry of default was issued against him. At a minimum, it appears from the record that *someone* at the MDPS was served with process, but this court is unable to state whether this was legally effective process. While different service of process standards do not apply to *pro se* plaintiffs, it is appropriate for this court to at least consider plaintiff's status in determining the disposition of this case. So considered, it appears to this court that the MDPS should have provided some response to the complaint in this case.

[Slip op. at 3].

While expressing its sympathy with plaintiff's predicament, this court also noted that it doubted its jurisdiction to enter even a default judgment for monetary damages against defendant, given the Eleventh Amendment immunity concerns which plainly exist in this context. Specifically, this court wrote that:

> Based upon this reading of the complaint, this court has serious doubts regarding its jurisdiction to enter the default judgment for monetary damages sought by the plaintiff. It is well settled that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court," and "[t]his bar remains in effect when State officials are sued for damages in their official capacity." *Osborne v. Travis Cty.*, No. 15 50202, 2016 WL 104410, at *2 (5th Cir. Jan. 8, 2016), *quoting Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). It is clear that the MDPS is an arm of the state for Eleventh Amendment purposes. Indeed, the Fifth Circuit has stated, in the context of an action against an MDPS official, that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Henley v. Simpson*, 527 F. App'x 303, 306 (5th Cir. 2013), *quoting Ford Motor Co. v. Dep't of Treas. of State of Ind.*, 323 U.S. 459, 464, 65 S.Ct. 347 (1945). *Henley* is closely on point in this case, and it strongly suggests that this court lacks jurisdiction to award plaintiff monetary damages in this case. Moreover, Eleventh Amendment immunity is a jurisdictional issue, and it is appropriate for this court to raise it on its own motion, if necessary. *See Perez v. Region 20 Educ. Serv. Ctr.,* 307 F.3d 318, 333 n. 8 (5th Cir. 2002) ("[W]e may consider this [sovereign immunity] issue *sua sponte* because it bears on this court's subject matter jurisdiction.")

[Slip op. at 1-2].

This court thus expressed (and reiterates here) its doubts that it has jurisdiction to enter a monetary judgment against defendant, but it also raised the possibility that it might have jurisdiction to enter an order directing him to issue plaintiff a driver's license. In so concluding, this court observed that:

> This court notes, however, that plaintiff also seeks an order directing the "Mississippi Department of Public Safety to reinstate [his] driver's license immediately," and this is a claim for which this court does potentially have jurisdiction. Indeed, a plaintiff can sometimes avoid the jurisdictional bar posed by sovereign immunity by suing a state officer and challenging the actions of that officer as prohibited by federal law and therefore *ultra vires*. *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). So long as the plaintiff seeks prospective injunctive relief, a federal court may consider whether the state officer's actions are forbidden by federal law. *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974).

3

[Slip op. at 2-3]. This court thus raised the possibility that the limited *Ex Parte Young* exception to Eleventh Amendment immunity might permit it to grant the injunctive relief plaintiff seeks. This court cautioned, however, that even the applicability of this limited exception was questionable, since:

> *Ex Parte Young* constitutes a rather narrow exception to its general lack of jurisdiction to enter judgments against the state. This fact requires this court to proceed cautiously in entering any default judgment ordering Brown to issue plaintiff a driver's license. Indeed, it is not even clear to this court that Brown is, in fact, the correct state official to name as a defendant under *Ex Parte Young* for the purposes of issuing such an order.

[Slip op. at 3-4].

While expressing these doubts, this court concluded that, since defendant had not responded at all to the complaint, he should have the burden of demonstrating why plaintiff should *not* be granted a default judgment with regarding to his request for injunctive relief. In its order, this court granted defendant two weeks in which to make such a showing, writing that:

> Given the clear jurisdictional concerns which exist in this context, this court will simply issue a show cause order giving Brown two weeks from this date to demonstrate why he should not be ordered to issue plaintiff a driver's license. Given that the issuance of such a license will likely be the sole disputed issue in this case, Brown would be well advised to carefully consider the facts of plaintiff's case and ascertain whether the issuance of such a license would present a genuine threat to public safety.

[Slip op. at 4]. In writing these words, this court was attempting to convey to defendant the importance of making a serious response to plaintiff's complaint, inartful though it may be, in which the substantive merit of his plea for a driver's license was carefully considered and addressed.

This court does not excuse defendant's prior failure to respond to this lawsuit, but it

4

believes that he has complied with the show cause order. Defendant provided his response in two separate April 27, 2016 filings, one of them being a response to plaintiff's motion for default judgment, and the second being his own motion to set aside the clerk's entry of default. In these filings, defendant addressed, as directed by this court, both the reasons for his failure to respond to the complaint and also the substantive merits of his (i.e., the MDPS's) decision to revoke plaintiff's driver's license.

> With regard to his prior failure to respond, defendant writes that:
>
> The Defendant's failure to timely respond to the Plaintiff's Complaint was not willful, but rather due to undersigned counsel's mistake. The Mississippi Department of Public Safety promptly notified the Mississippi Attorney General's Office that the Defendant had been served with process on March 22, 2016. However, because of undersigned counsel's hectic schedule during the time in which Defendant's Answer was due, undersigned counsel neglected to file an Answer on behalf of Defendant. Undersigned counsel was in the process of drafting the Answer when he was made aware of the granting the Entry of Default.

[Defendant's brief at 7]. In describing his "hectic schedule" at the time, counsel writes that:

> Undersigned counsel conducted a trial in state court on March 15, 2016. [*Id.*]. Moreover, undersigned counsel represents the State of Mississippi in a case challenging the constitutionality of the State's lethal injection protocol, which is currently on appeal before the Fifth Circuit. [*Id.*]. The Fifth Circuit ordered the State to file a response to a motion for rehearing en banc by March 25, 2016, in said appeal. [*Id.*]. As a result, undersigned counsel was required to devote his time and energies to drafting the response requested by the Fifth Circuit. [*Id.*].

[Defendant's brief at 5].

While this court agrees with counsel that his schedule at the time can fairly be described as "hectic," he is also correct in acknowledging that this does not excuse his failure to file any response to the complaint, not even a motion for time. While appearing to concede this point, counsel essentially throws himself at the mercy of this court, arguing that his mistakes should not

be held against defendant. In so arguing, defendant notes that it has been held that a "mistake or error on the part of a party's counsel is not generally considered to be a willful act." *See Side by Side Redevelopment, Inc. v. City of New Orleans*, 2010 WL 375237, *2 (E.D. La. 2010).

Fed. R. Civ. P. 55(c) provides that "[f]or good cause shown the court may set aside an entry of default . . . ." It is well settled that "[t]he decision to set aside a default decree lies within the sound discretion of the district court." *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985). In making the determination of whether to set aside an entry of default, "the district court should consider whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Id.* at 183. These three factors are not exclusive, and the Fifth Circuit has noted that courts may rely on other factors to determine whether "good cause" exists, such as whether "(1) the public interest was implicated, (2) there was a significant financial loss to the defendant, and (3) the defendant acted expeditiously to correct the default." *In re Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992). In so stating, the Fifth Circuit in *Dierschke* observed that "[w]hatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default. That decision necessarily is informed by equitable principles." *Id.*

In this case, this court believes that public policy considerations are paramount, since the decision regarding whether or not to issue plaintiff a driver's license is one which will affect not only the parties to this case, but also the driving public at large. This court accordingly will base its ruling primarily upon public interest factors, and not whether counsel's failure to timely respond to the complaint should be considered "excusable neglect." Whatever the level of

6

counsel's culpability in this regard, this court believes that, in his response, defendant makes a strong case for the MDPS's decision to deny plaintiff a driver's license.

In his brief, defendant writes that:

> In contrast to the complete lack of prejudice to Jordening, it would be highly prejudicial to the State to deny this motion and enter a default judgment. Jordening demands that the Department of Public Safety issue him a driver's license. If the Department of Public Safety is required to issue Jordening a driver's license, and he is allowed to drive a car, he could harm other citizens of this State whom the Department is legally obligated to protect. Jordening has been diagnosed with Parkinson's Disease and Dementia. [Jordening Appeal Record at 1, 3]. Further, one of his physicians has attested that he is not physically or mentally competent to safely operate a motor vehicle. [*Id.* at 3]. Accordingly, the public interest could be affected by Jordening's request for a default judgment. This factor alone creates good cause to set aside the Clerk's Entry of Default.

[Defendant's brief at 8-9].

In setting forth the specifics of the decision to deny plaintiff a driver's license, defendant writes that:

> In September 2013, the Mississippi Department of Public Safety's Driver Services Bureau received an Initial Reporting Form (DR-11) completed by Dr. Kenneth Sakauye, a psychiatrist in Memphis, for use in making a determination as to whether Plaintiff Harold Gene Jordening (DOB: 06/09/1932) should retain his driver's license. [Jordening Appeal Record at 1, attached hereto as Exhibit A]. Dr. Sakauye stated that Jordening had been diagnosed with Parkinson's Disease and Dementia. [*Id.*]. He also asserted that Jordening had "Poor judgment." [*Id.*]. Dr. Sakauye did not indicate on the form whether he believed Jordening should lose his driving privileges or whether further investigation into his physical and/or mental competence to safely operate a motor vehicle was warranted. [*Id.*]. Accordingly, the Driver Services Bureau asked him to fill out this portion of the form. Dr. Sakauye subsequently submitted a revised form in which he indicated that although he did not believe that Jordening's driver's license should be revoked, he did think that further investigation into Jordening's driving competency was warranted. [Jordening Appeal Record at 2].

> In February 2014, the Driver Services Bureau received another Initial Reporting Form from Dr. Steven Overby regarding Jordening's ability to drive. [Jordening

Appeal Record at 3]. Dr. Overby, who had been treating Jordening for nine years, reported that Jordening suffered from Parkinson's Disease and Dementia. [*Id.*]. He also stated that Jordening had been diagnosed with "Bipolar disorder, with possible schizophrenia affect." [*Id.*]. Dr. Overby checked the box on the form indicating that he believed Jordening should lose his driving privileges immediately. [*Id.*].

After receiving this information from Dr. Overby, the Driver Services Bureau sent a letter to Jordening on February 24, 2014, informing that a hearing had been scheduled for him to meet with a Hearing Officer on March 13, 2014, to consider his driving privileges. [Jordening Appeal Record at 4]. Jordening appeared at the Oliver Branch Driver's License Station on March 13, and a hearing was conducted. [Jordening Appeal Record at 5]. First, the Hearing Officer administered an eye test to Jordening. [*Id.*]. Jordening failed the test. [*Id.*]. Second, the Hearing Officer discussed Dr. Overby's report with Jordening. [*Id.*]. Based on Dr. Overby's report and his conversation with Jordening, the Hearing Officer concluded that Jordening "was suffering from numerous disorders that limited his ability to drive" and his "driving privileges should be revoked immediately." [*Id.*]. Jordening was informed of the Hearing Officer's decision and surrendered his driver's license. [*Id.*].

A second hearing to consider whether Jordening's driver's license should be reinstated was held on July 16, 2014. [Jordening Appeal Record at 6]. After speaking to Jordening and going over Dr. Overby's report, the Hearing Officer informed Jordening that he saw no reason to change his prior decision to medically suspend Jordening's driver's license. [*Id.*]. The Hearing Officer also advised Jordening that the decision to revoke his driver's license would stand "until his doctor state[d] differently about his medical conditions." [*Id.*].

[Defendant's brief at 1-3].

Plaintiff has not provided any response to defendant's briefing, indeed he has not filed any further submissions with this court since its April 2016 order. Plaintiff did file an interlocutory appeal with the Fifth Circuit, which dismissed that appeal on its own motion. In its order, the Fifth Circuit wrote that "[h]ere, the notice of appeal does not identify a judgment or order that the defendant wants this court to review. Consequently, we do not have jurisdiction over the appeal and it must be dismissed." [Slip op. at 2]. While it is evident from plaintiff's

prior submissions that he disagrees with at least some of defendant's description of the facts, this court believes that defendant's substantive and thorough briefing merited a specific response. This is particularly true in the context of a motion in which plaintiff seeks to hold defendant liable for his own failure to respond to the complaint.

It thus seems clear that both sides have been rather derelict in litigating this case, but this court's ruling today will, as stated previously, focus on the public safety implications of granting a default judgment. In this vein, this court believes that abundant "good cause" exists to set aside the clerk's entry of default, based upon defendant's submissions regarding both the substantive merits of MDPS's decision to deny plaintiff a driver's license and also the procedures it followed in making that decision. In so stating, this court must emphasize that it is not an appellate court which has jurisdiction to review the MDPS's decisions regarding whether to issue a particular citizen a driver's license. Indeed, it is highly unusual for a case of this nature to be filed in this court at all. The complaint in this case is predicated upon the notion that defendant's decision to not issue plaintiff a driver's license was so egregious and lacking in proper procedures as to rise to the level of a violation of the U.S. Constitution. That is the context in which this court decides the issues in this case. Needless to say, it is only in the most egregious cases that a state's decision, on medical grounds, to deny a plaintiff a driver's license may validly be said to constitute a constitutional violation.

The pending default judgment motions do not provide a proper context in which to actually rule upon the substantive merits of the constitutional issues in this case. Nevertheless, one of the *One Parcel* factors is "whether a meritorious defense is presented," *id.* at 183, and based upon the submissions before the court, it seems extremely doubtful that plaintiff will be

able to obtain relief in this (or any other) federal lawsuit.

In so stating, this court reiterates that it has great sympathy for the personal difficulties which plaintiff has suffered as a result of lacking a driver's license, and it strongly encourages defendant to offer plaintiff all due procedures as far as continuing to evaluate his ability to drive. Nevertheless, it seems virtually certain that this is not one of the vanishingly rare cases in which this court might overturn, on constitutional grounds, a state's decision to deny a citizen a driver's license based on medical concerns. This court therefore concludes that defendant almost certainly has meritorious defenses to the claims in this case and that the public interest strongly supports it being allowed to assert those defenses. This court further concludes that, considered together, these factors strongly support setting aside the clerk's entry of default in this case.

It is therefore ordered that defendant's motion [17-1] to set aside the entry of default is granted, and plaintiff's original and amended motions for a default judgment [13-1, 15-1] are denied.

So ordered, this the 24th day of January, 2017.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**